UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :

FIFTY-SIX HOPE ROAD MUSIC LTD.,     :
CEDELLA MARLEY, DAVID MARLEY,      :
JULIAN MARLEY, KAREN MARLEY,       :
RITA MARLEY, ROHAN MARLEY,         :
STEPHEN MARLEY, DAMIAN MARLEY,    :   08 CIV. 6143 (DLC)
STEPHANIE MARLEY, and ROBERT MARLEY, :
                                           :   <u>OPINION & ORDER</u>
                    Plaintiffs,   :
                                         :

                -v-                :
                                         :
UMG RECORDINGS, INC.,             :
                    Defendant.   :
                                         :
----------------------------------------X

For Plaintiffs:

Gregory A. Clarick
Manatt, Phelps & Phillips LLP
7 Times Square
New York, New York 10036

For Defendant:

Andrew H. Bart
Jenner & Block LLP
919 Third Avenue, 37th Floor
New York, New York 10022


DENISE COTE, District Judge:

     On January 21, 2010, counsel for Fifty-Six Hope Road Music

Ltd. and the individual Marley plaintiffs (the "plaintiffs")

submitted a letter in support of their January 12 application

pursuant to Fed. R. Civ. P. 26(c) seeking return of purportedly

privileged documents.  Plaintiffs claim that these documents

were inadvertently produced to defendant UMG Recordings, Inc.
("UMG") by a third-party witness, Chris Blackwell ("Blackwell").
UMG submitted its opposition to plaintiffs' application on
January 25.  Plaintiffs submitted a reply on January 27.  For
the following reasons, plaintiffs' application is denied.

At the heart of plaintiffs' application is their contention
that they "retained" Blackwell to act as their "representative"
in this litigation.  In this role, plaintiffs disclosed to
Blackwell "numerous confidential communications" between
plaintiffs and their counsel, which plaintiffs contend are
protected by the attorney client privilege and the work-product
doctrine.  Plaintiffs maintain that Blackwell was included on
these communications based on plaintiffs' "understanding and
expectation" that he would keep the communications confidential.
On November 6, 2009, Blackwell produced certain purportedly
privileged documents in response to a May 22, 2009 subpoena
issued to him by UMG.  Plaintiffs maintain that Blackwell's
production of their purportedly privileged documents was
inadvertent.

The attorney-client privilege covers communications between
a client, or her representative, and her attorney that are
maintained in confidence and that are undertaken for the purpose
of obtaining or providing legal advice.  See In re County of
Erie, 473 F.3d 413, 418 (2d Cir. 2007).  The privilege is

designed "to encourage attorneys and their clients to
communicate fully and frankly and thereby to promote broader
public interests in the observance of law and administration of
justice." Id. (citing Upjohn Co. v. United States, 449 U.S.
383, 389 (1981)).  Courts "construe the privilege narrowly
because it renders relevant information undiscoverable; [courts]
apply it only where necessary to achieve its purpose." Id.
"The burden of establishing the applicability of the privilege
rests with the party invoking it." Id.; see also In re Grand
Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000).  "[A]ny such
protection does not continue when the client voluntarily
discloses the documents to a third party." Ratliff v. Davis
Polk & Wardwell, 354 F.3d 165, 170 (2d Cir. 2003); see also In
re Horowitz, 482 F.2d 72, 81 (2d Cir. 1973) ("[D]isclosure to a
third party by the party of a communication with his attorney
eliminates whatever privilege the communication may have
originally possessed, whether because disclosure is viewed as an
indication that confidentiality is no longer intended or as a
waiver of the privilege.").

    Plaintiffs fail to meet their burden of establishing that
the privilege should apply to the documents at issue here
because, inter alia, they have not demonstrated that Blackwell
is their representative or agent.  The affidavit submitted by
plaintiffs in support of their application includes only a

3

conclusory assertion that Blackwell served as their representative "beginning in 2007 until late 2008." The affidavit indicates that plaintiffs "retained" Blackwell to "act as their representative vis-à-vis UMG" in hopes of resolving the parties' dispute, or in the alternative to manage plaintiffs' litigation against UMG. Plaintiffs provide no documentary evidence, however, to suggest that such an agreement -- explicit or implicit -- existed between plaintiffs and Blackwell. Nor has Blackwell submitted an affidavit attesting to the existence of such an agreement with plaintiffs, even though he was explicitly invited by the Court to do so.

Plaintiffs contend that they included Blackwell in confidential communications with their attorneys with the expectation Blackwell would keep the communications confidential, but they fail to explain why Blackwell was included in the first place. Plaintiffs merely assert that Blackwell's inclusion was necessary in order for their attorneys to provide them informed legal advice. "[A] communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client." United States v. Ackert, 169 F.3d 136, 139 (2d Cir. 1999). Furthermore, to the extent that plaintiffs included Blackwell because of his knowledge of the facts, this

is insufficient to bring him within the purview of the attorney-client privilege.  See United States v. Adlman, 68 F.3d 1495, 1499-1500 (2d Cir. 1995).  Accordingly, plaintiffs had no reasonable expectation of confidentiality in their communications involving Blackwell.

That Blackwell was not plaintiffs' agent is most starkly demonstrated by the fact that plaintiffs only invoke Blackwell's agency status when it suits their interests.  When UMG previously sought documents from plaintiffs and the numerous entities that have held the rights in the agreements at issue in this litigation, plaintiffs asserted that they had no ability or obligation to produce the documents because they were in Blackwell's possession.  Plaintiffs advised UMG that it should seek the relevant documents directly from Blackwell.  At no point did plaintiffs advise UMG that Blackwell was retained as their representative or agent in this litigation, or that he possessed purportedly privileged documents belonging to plaintiffs.  Blackwell was either plaintiffs' agent or he was not -- plaintiffs cannot have it both ways.

Furthermore, when UMG served plaintiffs with a copy of the May 22, 2009 subpoena issued to Blackwell, plaintiffs did not object to any of the categories of documents requested by UMG, nor did plaintiffs indicate that responsive documents in Blackwell's possession might be subject to privilege.  It took

months for UMG to obtain responsive documents from Blackwell.
It was not until almost five months after the subpoena was
served that plaintiffs' counsel sent an e-mail to Blackwell's
assistant to "remind" him that certain documents in his
possession "may be protected by the attorney-client privilege."
Plaintiffs have thus failed to demonstrate that they made any
meaningful effort to insure that their communications remained
confidential.  See In re von Bulow, 828 F.2d 94, 101 (2d Cir.
1987) ("[I]t is the client's responsibility to insure continued
confidentiality of his communications.").  In short, because
plaintiffs have provided no legal or factual basis for finding
that their communications involving Blackwell were protected by
the attorney-client privilege, plaintiffs are not entitled to
the return of the documents produced by Blackwell pursuant to
UMG's subpoena.

Plaintiffs also make a perfunctory argument that some of
the documents produced by Blackwell are protected by the work-
product doctrine.  "[T]he work-product doctrine is distinct from
and broader than the attorney-client privilege." Grand Jury
Proceedings, 219 F.3d at 190 (citation omitted); see also Haugh
v. Schroder Inv. Mgmt. North Am. Inc., 02 Civ. 7955 (DLC), 2003
WL 21998674, at *4-5 (S.D.N.Y. Aug. 25, 2003).  "The attorney
work product doctrine provides qualified protection for
materials prepared by or at the behest of counsel in

anticipation of litigation or for trial." In re Grand Jury
Subpoena dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007)
(citation omitted).  The core goal of the doctrine is "to
preserve a zone of privacy in which a lawyer can prepare and
develop legal theories and strategy with an eye toward
litigation, free from unnecessary intrusion by his adversaries."
United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998).
Like the attorney client privilege, the party invoking the
privilege bears "the heavy burden" of establishing its
applicability.  See Grand Jury Subpoena, 510 F.3d at 183.
Voluntary (as opposed to compelled) disclosure of documents to a
third-party may waive the work-product privilege.  See Grand
Jury Proceedings, 219 F.3d at 191.

Plaintiffs' attempt to use the work-product doctrine to
shield the documents produced by Blackwell is equally
unavailing.  Even if the documents at issue were work-product,
which plaintiffs have not adequately proven, plaintiffs concede
that they voluntarily provided the documents to Blackwell.
Although plaintiffs argue that a party may show attorney work
product to a third party "simply because there was some good
reason to show it," Adlman, 134 F.3d at 1200 n.4, plaintiffs
have not provided an adequate explanation for why it was
necessary to share their attorneys' work product with Blackwell.
Furthermore, by disclosing these documents to Blackwell, who

plaintiffs must have anticipated would be a material witness in this litigation, plaintiffs substantially increased the likelihood that these documents would fall into the hands of their adversary.  See In re Steinhardt Partners, L.P., 9 F.3d 230, 235 (2d Cir. 1993) ("Once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears.").

Moreover, if Blackwell was plaintiffs' agent or representative, then plaintiffs had an obligation to produce the documents in his possession pursuant to UMG's document requests. Plaintiffs could then have objected to UMG's requests based on a claim of attorney-client privilege, work-product doctrine, or on some other ground.  That plaintiffs refused to do so, and instead insisted that UMG obtain the documents directly from Blackwell, militates strongly in favor of finding that plaintiffs waived any objection based on the work-product doctrine.  Plaintiffs having imposed on UMG the burden of pursuing Blackwell for these documents, they may not now contend that he was their agent all along.

CONCLUSION

Plaintiffs' January 12, 2010 application seeking return of the documents produced to UMG by Blackwell is denied.


SO ORDERED:

Dated:     New York, New York
           February 1, 2010

                                      _____
                                               DENISE COTE
                                      United States District Judge