```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
FIFTY-SIX HOPE ROAD MUSIC LTD., CEDELLA :
MARLEY, DAVID MARLEY, JULIAN MARLEY,    :
KAREN MARLEY, RITA MARLEY, ROHAN        :       08 Civ. 6143 (DLC)
MARLEY,                                 :
STEPHEN MARLEY, DAMIAN MARLEY,          :       OPINION & ORDER
STEPHANIE MARLEY, and ROBERT MARLEY,    :
                       Plaintiffs,      :
                                        :
              -v-                       :
                                        :
UMG RECORDINGS, INC.,                   :
                       Defendant.       :
                                        :
----------------------------------------X
```

Appearances:

For Plaintiffs:
Bonnie E. Eskenazi
Ricardo P. Cestero
Rachel Valadez
1900 Avenue of the Stars, 21st Floor
Los Angeles, CA 90067

For Defendant:
Andrew H. Bart
Joseph J. McFadden
M. Mitchell Oates
Jenner & Block LLP
919 Third Avenue, 37th Floor
New York, NY 10022

DENISE COTE, District Judge:

   This Opinion addresses motions in limine in an action to recover unpaid royalties on the sound recordings of the Jamaican reggae artist Bob Marley. The plaintiffs are Marley's widow and children and their wholly-owned company, Fifty-Six Hope Road Music Ltd. ("Fifty-Six"); their royalty accounting claims

concern the interpretation of a 1992 master agreement governing the defendant UMG Recordings, Inc. ("UMG") rights to the Marley recordings.

On January 21, 2011, UMG filed motions in limine for an order (1) excluding evidence of claims for additional royalties allegedly owed to the plaintiffs by UMG for the periods prior to July 1, 2004 or between July 1, 2005 and June 30, 2006; (2) excluding the testimony of Thomas Hayes ("Hayes"), Eric Levine ("Levine"), Leonard Lowry ("Lowry"), Michelle Simon ("Simon"), and Alain Levy ("Levy") on the ground that the plaintiffs did not timely disclose these witnesses; (3) excluding evidence of an alleged differential in the distribution costs associated with "hard" goods such as records versus digital downloads; (4) excluding evidence of the equitable value of the services rendered by foreign entities which are licensed by UMG to distribute music abroad; (5) excluding testimony by UMG employees concerning the interpretation of the royalty agreement with an effective date of July 1, 1992 (the "1992 Agreement"); (6) holding that New York law, rather than English law, governs the interpretation of the 1992 Agreement; (7) precluding all trial testimony from the individual plaintiffs; and (8) precluding the plaintiffs from pursuing a claim against UMG for the underpayment of royalties on public performance fees. By Order of February 28, the Court held that New York law governs

the interpretation of the 1992 Agreement and thereby granted UMG's sixth motion in limine.

UMG's motion to exclude evidence of underpayment of royalties prior to June 1, 2004 or between July 1, 2005 and June 30, 2006 is granted.  UMG's motion to preclude admissions by UMG employees is granted.  Its motion to preclude testimony by individual plaintiffs is denied.  UMG's motion to preclude a claim for the underpayment of public performance fees is granted.  UMG's motion to preclude the testimony of Hayes, Levine, Lowry, Simon and Levy is denied.  UMG's motion to preclude evidence regarding the relative costs of digital download is denied; its motion to preclude evidence regarding the equitable value of services by foreign licensees is granted.

1. UMG's Motion to Enforce Contractual Incontestability Provisions

UMG argues that the 1992 Agreement incorporates a three-year incontestability provision by reference to prior agreements between the parties or their predecessors and that accordingly the plaintiffs should be precluded from pursuing claims where they failed to timely object to the royalty statements provided to them by UMG.  The plaintiffs contend that there is no incontestability provision to bar their claims and, if there is,

3

that UMG has waived the right to enforce it.  UMG's motion to enforce the incontestability provisions is granted.

A detailed chronology of the various royalty agreements entered into by the parties can be found in the Court's summary judgment opinion.  <u>Fifty-Six Hope Road Music Ltd. et al. v. UMG Recordings, Inc.</u>, No. 08 Civ. 6143 (DLC), 2010 WL 3564258, at *1-*6 (S.D.N.Y. Sept. 10, 2010) (hereinafter the "September 10 Opinion").  As set forth in the September 10 Opinion, the first agreement between the parties, the 1972 Agreement, contained an incontestability provision which provided that royalty statements were binding "unless specific objection in writing stating the basis thereof is given to the Company within twelve months from the date the statement in question is rendered."  The 1974 Agreement also contained an incontestability provision, but this provision extended the time for objections to three years after the royalty statement was rendered.  The 1975 and 1983 Agreements contained three-year incontestability provisions, which were incorporated by reference into the 1984 Agreement.  The 1986 Agreement did not contain an incontestability provision; it stated, however, that royalties "shall be calculated and computed on the same basis mutatis mutandis" as the 1984 Agreement.  By an agreement with an effective date of January 1, 1990, the rights in the prior

4

agreements were transferred to a successor Marley entity, Stichting Bob Marley.

The 1992 Agreement does not contain an incontestability provision. It states that it "shall constitute an amendment to the 1990 Agreement, and except as expressly amended hereby, all provisions of the 1990 Agreement shall remain in full force and effect." Two agreements followed the 1992 Agreement, with effective dates of August 31, 1999 (the "1999 Agreement") and April 10, 2001 (the "2001 Agreement"). Neither of these agreements contained incontestability provisions, but they explicitly referenced the earlier agreements and defined them as the "Marley Agreements." The 1999 Agreement provides that "[e]xcept as expressly modified hereby, the Marley Agreements shall remain in full force and effect and are hereby ratified and confirmed." The 2001 Agreement contains a similar provision.

New York courts have routinely enforced contractual incontestability clauses in life insurance policies. See, e.g., New England Mut. Life Ins. Co. v. Doe, 93 N.Y.2d 122, 128 (1999). In Miller v. Columbia Records, 415 N.Y.S.2d 869, 870-71 (1st Dept. 1979), the Appellate Division upheld a one-year incontestability provision in the plaintiff's royalty agreement with the defendant recording company. The Miller court reasoned that "[t]his provision is binding and bars all claims for any

5

period antedating one year before rendition of each statement. Otherwise, the contract would be without purpose or effect." Id. at 871 (citation omitted).

The 1992 Agreement is characterized as an "amendment" to the 1990 Agreement, which incorporates by reference the provisions of the 1972, 1974, 1975, 1983, 1984, and 1986 Agreements.  The plaintiffs argue that because the 1972 Agreement contains a one-year incontestability provision, while the 1974, 1975, and 1983 Agreements contain a three-year provision (which is incorporated by reference into the 1984 Agreement), it is unclear which provision, if any, is incorporated into the 1992 Agreement.  Under New York law,

> General canons of contract construction require that where two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect. This doctrine applies with equal force where two documents are contemporaneous and related or where one incorporates the terms of the other.

Seabury Const. Corp. v. Jeffrey Chain Corp., 289 F.3d 63, 69 (2d Cir. 2002) (citation omitted).

The 1992 Agreement is most logically understood as a master agreement which standardized the royalty rates and methods of calculation of royalties for the sound recordings produced under all prior agreements.  Thus, the 1992 Agreement would logically have adopted one incontestability provision to govern all future royalty statements.  The most reasonable way to read the 1992

Agreement is as adopting the three-year incontestability provision, which was contained or incorporated in four prior agreements, to govern any objections to royalty statements issued under its terms.

The plaintiffs' argument that UMG has waived any right to enforcement of the incontestability provision is unavailing. The plaintiffs point to an agreement dated February 20, 1987 between Bob Marley Music Limited B.V., Island Records, Inc. and Island Records, Ltd.  The agreement refers to a request for an audit of Island Records and states that "in the event that the audit gives rise to a claim for royalties due which cannot be resolved except by judicial intervention, Island Records will honor its long-standing commitment to us that it will not seek to assert the passage of time as a bar to any portion of the claim."  Plaintiffs do not suggest, however, that the current dispute arose out of the audit referenced in the 1987 agreement. Further, an agreement not to assert the affirmative defense of incontestability for any claim for unpaid royalties resulting from an audit conducted in 1987 cannot be construed as a waiver of any future right to enforcement of the incontestability provision.

The plaintiffs do not dispute that they first objected to the royalty statements for the period January 1, 2001 to June 30, 2005 by letter of January 8, 2008.  The three-year

7

incontestability provision bars all objections to royalty statements issued prior to January 8, 2005, which is three years prior to the first written objection by the plaintiffs. The plaintiffs later claimed underpayment of royalties for the period July 1, 2005 through June 30, 2009 by letter of March 30, 2010. Any claims for underpayment of royalties for the period between January 8, 2005 and March 30, 2007, three years prior to the March 30, 2010 letter, are also barred by the three-year incontestability provision.

2. UMG's Motion to Preclude the Testimony of Hayes, Levine, Lowry, Simon and Levy

UMG requests that the Court preclude the testimony of Hayes, Levine, Lowry, Simon and Levy for failure to timely disclose these witnesses pursuant to Rule 26(a), Fed. R. Civ. P. The motion is denied.

After the filing of its motion on January 21, 2011, UMG requested by letter of June 14 that the Court order plaintiffs to disclose the nature of their contacts with Hayes, Levine, Lowry and Levy. UMG advised the Court that each of these four witnesses had assisted in the negotiation of the royalty agreements at issue as an officer, director or attorney for UMG. UMG also sought the extent of the plaintiffs' contacts with Chris Blackwell ("Blackwell"), a former officer and director of

Island Records, Inc.  At a telephone conference on June 21, the Court ordered the plaintiffs to inform UMG before initiating any further communication with the five witnesses.  The Court further advised UMG that it could depose any of the five witnesses in order to learn the nature of the witnesses' conversations with the plaintiffs.  Because the Court has given UMG an opportunity to depose Hayes, Levine, Lowry, and Levy in the months prior to the trial date of December 12, 2011, thus curing any prejudice stemming from the plaintiffs' failure to timely disclose these witnesses, the motion to preclude the testimony of these witnesses is denied.

UMG represents that it was first notified that the plaintiffs intended to call Simon as a witness on January 17, 2011, four days before the filing of the pretrial order on January 21.  Simon is an employee of Berdon LLP, the auditing firm that conducted the royalty investigations on behalf of the plaintiffs.  Because UMG will have ample opportunity to depose Simon if it desires prior to the start of trial on December 12, 2011, the motion to preclude Simon's testimony is denied.

3.  UMG's Motion to Preclude Evidence of Relative Costs

UMG moves to preclude the plaintiffs from presenting evidence regarding the relative costs of distributing digital

9

downloads versus more traditional goods such as records and CDs. UMG's motion is denied.

UMG argues that Paragraph 2 of the 1992 Agreement, which governs royalty rates on the sale of records, also governs royalties for digital downloads.  In its September 10 Opinion, the Court found the language of the 1992 Agreement to be ambiguous on this point.  Under New York law, extrinsic evidence may be used to shed light on the parties' intent in drafting the contract where the Court has determined that the contract language is ambiguous.  AP Energy Servs. Gas Holding Co v. Bank of America, N.A., 626 F.3d 699, 729 n.14 (2d Cir. 2010).  Thus, the parties are entitled to present extrinsic evidence of industry custom and practice in the sale of digital downloads to shed light on the parties' intent in drafting the 1992 Agreement.  This includes evidence of the costs of distribution of digital downloads compared with the costs of distribution of records.  UMG argues that the parties could not possibly have contemplated the advent of digital downloads at the time the 1992 Agreement was drafted; this is an argument more properly explored at trial.  Accordingly, the motion is denied.

4.  UMG's Motion to Preclude Evidence of Value of Foreign Services

UMG moves to preclude the plaintiffs from presenting evidence of the equitable value of services rendered by UMG's foreign affiliates in distributing digital downloads.  The plaintiffs agree that neither party should be permitted to introduce evidence regarding the services performed by UMG's foreign licensees or the value of such services.[1]  The plaintiffs contend, however, that they should be permitted to argue that the lack of any evidence on this point supports the theory that UMG improperly dilutes its royalty payments by allowing its affiliates to take large deductions.  Because the parties consent to the exclusion of evidence regarding the value of services provided by foreign affiliates, the plaintiffs will not be permitted to make this argument at trial.  In the absence of evidence, the plaintiffs' proposed argument regarding dilution would invite jury speculation and is barred.

5.  UMG's Motion to Preclude Testimony of UMG Employees

UMG moves to exclude deposition testimony by Ping Hu ("Hu"), the Vice President of Royalty Audits, and Cindy Oliver

---

[1] The plaintiffs take the position that the evidence is inadmissible because UMG withheld that information during discovery.  The plaintiffs failed to raise this issue with the Court during discovery, however, despite having the opportunity to do so.

("Oliver"), the Senior Vice President of Royalties and Copyrights, and emails authored by Hu and Charles Ciongoli ("Ciongoli"), the Chief Financial Officer of UMG, all concerning the interpretation of Paragraph 11 of the 1992 Agreement, which the plaintiffs contend governs royalties on digital downloads. UMG's motion is granted.

Rule 801(d)(2)(D), Fed. R. Evid., excludes from the category of hearsay, admissions by a party-opponent if the statement was one "by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."

> In order to introduce evidence of an out-of-court statement as nonhearsay under Rule 801(d)(2)(D), a party must lay a sufficient foundation by establishing (1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency.

Marcic v. Reinauer Transportation Co., 397 F.3d 120, 128-29 (2d Cir. 2005) (citation omitted).

The plaintiffs are precluded from introducing the deposition testimony of Oliver regarding her understanding of the term "digital downloads." The plaintiffs have not shown that Oliver's duties at UMG included the interpretation and application of the 1992 Agreement to the payment of royalties on digital downloads. At her deposition, Oliver merely offered her

12

own general understanding of the phrase "digital downloads" and did not testify that her day-to-day responsibilities involved the interpretation of this phrase or the calculation of payments under the 1992 Agreement.

Rule 408(a), Fed. R. Evid., provides that evidence of "furnishing . . . a valuable consideration in compromising or attempting to compromise [a] claim" is not admissible "to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction."  Rule 408 codifies "a fundamental rule . . . which essentially forbids a court from basing adverse findings on a party's concessions in settlement negotiations."  <u>Rein v. Socialist People's Libyan Arab Jamahiriya</u>, 568 F.3d 345, 351 (2d Cir. 2009).

The emails authored by Hu and Cignoli were sent to other employees at UMG and concern UMG's agreement of August 15, 2007 with the plaintiffs that, not withstanding UMG's contention that Paragraph 2 governs royalties on digital downloads, it would prospectively pay royalties on the requested basis.  The plaintiffs represent that they do not intend to offer Cignoli's email at trial.  To the extent that plaintiffs seek to introduce Hu's email and deposition testimony regarding the email to make the argument that UMG has conceded that Paragraph 11 applies to

13

digital downloads, this argument is barred by Rule 408(a). Accordingly, UMG's motion is granted.

6.  UMG's Motion to Preclude Testimony by Individual Plaintiffs

UMG moves to preclude the testimony of the ten individual plaintiffs who are members of the Marley family, arguing that the individual plaintiffs were not involved in the drafting or negotiation of the 1992 Agreement and that they are not currently involved in the mechanics of the payment of royalties to Marley's estate.  UMG's motion is denied.

The plaintiffs indicate that one or more of them will present non-cumulative testimony about the fame of Bob Marley, the business and purpose of Fifty-Six, the relationship between Fifty-Six and UMG, and to the extent necessary to respond to any argument by UMG, the purpose for which they filed this lawsuit. These matters will be addressed in more detail at the final pretrial conference, but to the extent that an individual plaintiff has non-cumulative, competent, and relevant testimony, the plaintiff will be permitted to testify.

7.  UMG's Motion to Preclude a Claim for Underpayment of Public Performance Fees

UMG moves to preclude the plaintiffs from asserting a claim for underpayment of public performance fees, arguing that this claim was not raised in the plaintiffs' third amended complaint.

14

The plaintiffs argue that their claim for public performance fees is encompassed by the Fifth Cause of Action, which states that

> Beginning in 2002, and continuing through 2008, UMG has breached the agreements that govern the exploitation of Marley's sound recordings with Plaintiff Fifty-Six Hope Road by underreporting royalties, including in the following ways . . . .

The complaint goes on to list specific examples of UMG's violation of the royalty agreements; it does not reference underpayment of public performance fees.  This is insufficient to put UMG on notice for a claim of underpayment of public performance fees.

The plaintiffs also argue that UMG has been on notice of this claim since at least March 30, 2010, after the close of fact discovery in this case, when the plaintiffs produced an audit report demonstrating the alleged underpayment.  Exhibit M of the March 30 audit report is titled "Unreported Public Performance Master Use Fees" and calculates additional royalties due to the plaintiffs as a result of UMG's receipt of fees for the use of Marley's music at public performances.

The plaintiffs have not identified any portions of their initial disclosures, depositions, any requests for documents, or any other discovery other than the March 30 audit report that might have revealed to UMG that the plaintiffs were pursuing a

15

claim for underpayment of public performance fees.  If the Court were to find that the March 30 audit report gave UMG fair notice of the public performance fee claim, then fact discovery would have to be extended for a significant period of time to allow the parties to revise their discovery plans and conduct full discovery of this claim.  Such expense and delay runs afoul of Rule 1 of the Federal Rules of Civil Procedure and should not be readily entertained.  Herbert v. Lando, 441 U.S. 153, 177 (1979). ("the discovery provisions, like all of the Federal Rules of Civil Procedure, are subject to the injunction of Rule 1 that they be construed to secure the just, speedy, and inexpensive determination of every action").  Accordingly, UMG's motion is granted.

## CONCLUSION

UMG's motion to exclude evidence of underpayment of royalties prior to June 1, 2004 or between July 1, 2005 and June 30, 2006 is granted.  UMG's motion to preclude admissions by UMG employees is granted.  Its motion to preclude testimony by individual plaintiffs is denied.  UMG's motion to preclude the testimony of Hayes, Levine, Lowry, Simon and Levy is denied.  UMG's motion to preclude evidence regarding the relative costs of digital downloads is denied; its motion to preclude evidence regarding the equitable value of services by foreign licensees

is granted. UMG's motion to preclude the plaintiffs' claim for underpayment of public performance fees is granted.

SO ORDERED:

Dated: New York, New York
August 31, 2011

_____
DENISE COTE
United States District Judge