UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
FIFTY-SIX HOPE ROAD MUSIC LTD., CEDELLA :
MARLEY, DAVID MARLEY, JULIAN MARLEY,     :
KAREN MARLEY, RITA MARLEY, ROHAN         :      08 Civ. 6143 (KBF)
MARLEY, STEPHEN MARLEY, DAMIAN MARLEY,   :
STEPHANIE MARLEY, and ROBERT MARLEY,     :      MEMORANDUM & ORDER
                                         :
                            Plaintiffs,  :
                                         :
              -v-                        :
                                         :
UMG RECORDINGS, INC.,                    :
                            Defendant.   :
                                         :
-----------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 0 7 DEC 2011

KATHERINE B. FORREST, District Judge:

        The standard for recusal is an objective one--i.e., "Would

a reasonable person, knowing all the facts, conclude that the

trial judge's impartiality could reasonably be questioned?"

U.S. v. Lovaglia, 954 F.2d 811, 815 (2d Cir. 1992) (emphasis

added); see also In re Drexel Burnham Lambert Inc., 861 F.2d

1307, 1312 (2d Cir. 1988), cert. denied 490 U.S. 1102, 109 S.Ct.

2458, 104 L.Ed.2d 1012 (1989).  Here, would a reasonable person,

knowing:

        (i)    that I was counsel for UMG Recordings, Inc. ("UMG")

               (among a number of other record companies) in Arista

               Records, LLC et al. v. Lime Group LLC et al. ("Lime

               Wire") up until January 8, 2010,

(ii)     but that "I dealt with counsel for UMG infrequently, I did not personally review any UMG documents in connection with my representation, I never visited any UMG office or met with any UMG executive at any point during that representation, and I did not prepare or defend any UMG personnel for any deposition or proceeding," Mem. & Order, Nov. 16, 2011 (Dkt. No. 164) at 5,

(iii)    and that "neither prior to nor following that engagement have I had any ongoing personal relationships with any individual (including legal counsel) employed by UMG," see id., and

(iv)     that I have never had any discussion with anyone at UMG about their accounting practices generally nor have I ever reviewed or discussed a particular UMG artist contract

conclude that my impartiality would be impaired in presiding over a jury trial in a matter regarding accounting for royalties in relation to a recording contract that I have never seen, and never discussed with anyone, but in which UMG is a party?  The answer is "no."

Plaintiffs posit that the question should be whether a reasonable observer would likely "conclude that, during [my] representation of UMG in the Lime Wire Action, [I] obtained

2

confidential information regarding UMG's internal analysis and treatment of its distribution arrangements with digital music providers." Mot. for Reconsid. (Dkt. No. 168) at 6. That framing fails to take account, as the Second Circuit requires, of "all of the facts," both as they are set forth in the November 16 Order and again below. See In re Drexel Burnham Lambert Inc., 861 F.2d at 1313 ("[J]udges determine appearance of impropriety--not by considering what a straw poll of the only partly informed man-in-the-street would show--but by examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge." (emphasis added)).

For that reason and those discussed below, and because "[a] judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is," id. at 1312 (emphasis added), Plaintiffs' motion for reconsideration of my November 16, 2011 decision is DENIED.

BACKGROUND

On November 8, 2011, this case was randomly reassigned to me from the Hon. Denise L. Cote. Upon transfer, I noted that UMG, a former client by whom I had been formally retained only once, and for which such representation terminated effectively on January 8, 2010, was a party. I concluded that recusal was not necessary and indeed not appropriate given the nature and

3

timing of my representation, as well as my limited interaction with UMG over the term of my legal career.

Due to a conflict between the originally-scheduled trial date and my own calendar, on November 9, 2011, my law clerk conducted a telephone call with the parties regarding the trial date.  My law clerk inquired whether the parties still intended to proceed with a jury trial.  Counsel for both parties answered affirmatively.

During that call, counsel for UMG raised the matter of my prior representation of UMG in Lime Wire.  My law clerk informed the parties that I was aware that UMG was a party to this action, but that after consideration and conferral, I did not believe that recusal was necessary or appropriate.  My law clerk properly directed the parties to provide a letter to the Court-- either separately or jointly--setting forth any position they wished to state regarding my presiding over this action.[1]

The parties submitted a joint letter on November 14, 2011.[2] Plaintiffs argue that because my law clerk informed them to

---

[1] The opportunity to provide a letter (rather than engage in lengthy motion practice) was meant to expedite this issue in a case that is set to go to trial in short order.

[2] The parties note that I provided an entry on the docket on November 14, 2011, regarding the nature and termination of my representation of UMG in Lime Wire "after [they] had prepared and submitted their letter."  Mot. for Reconsid. at 2.  At the time I provided the minute order, I had not yet received any letter, but knew that my law clerk had directed the parties to submit a letter five days earlier--i.e.,

submit a letter to the Court, their letter "did not contain any legal argument, nor did it detail the grounds on which the parties believed recusal was appropriate."[3]  Mot. for Reconsid. at 2.  Plaintiffs' mischaracterization of my law clerk's representations regarding their ability to raise legal argument or caselaw in their letters to the Court is neither necessary nor helpful to the Court.  Had the parties consulted my Individual Rules of Practice for Civil Cases at that time (as Plaintiffs clearly have done recently as evidenced by their November 29, 2011 pre-motion letter), they could have submitted a pre-motion letter (which would have been a letter stating their position, but also would have contained legal argument and citation to caselaw) requesting leave to bring a motion for judicial disqualification.  That issue is of no moment, however. The instant unopposed motion gives Plaintiffs the opportunity to argue their position, with citations to what they believe is relevant authority, and provide whatever else they believe supports their position.

---

on November 9.  The parties' joint letter arrived in my Chambers on November 15, 2011.

[3] Plaintiffs represent that my law clerk told them not to e-file the letter.  My law clerk informed the parties that they could deliver the letter to the Court as soon as it was ready, but informed the parties that pursuant to the Electronic Case Filing Rules & Instructions for the Southern District of New York, letters may not be filed electronically on the docket.  See Rule 13.1, ECF Rules & Instructions, S.D.N.Y.

In their November 14 letter, the parties stated that they believed recusal was appropriate based upon (i) my representation of UMG in the Lime Wire matter;[4] (ii) my prior argument on behalf of a number of record companies, including UMG, in Chambers v. Time Warner, Inc. before the Second Circuit in 2002;[5] and (iii) my knowledge of "legal issues with respect to digital issues." See Decl. of Ricardo P. Cestero ("Cestero Decl.") (Dkt. No. 169) Ex. A.  Upon consideration of the relevant caselaw and ethical guidance, on November 16, 2011, I denied what I construed to be a motion for judicial disqualification.

On November 30, 2011, I received a pre-motion letter (dated November 29, 2011) from Plaintiffs seeking to make the instant motion, and informing me that UMG would not oppose the motion. Cestero Decl., Ex. E.  I granted Plaintiffs' request, and stated that because UMG would not be opposing the motion, I would consider the motion fully submitted upon receipt of Plaintiffs' motion.

On December 5, 2011, Plaintiffs moved for reconsideration of my November 16, 2011 Memorandum & Order denying what I

---

[4] My primary legal contact for the Lime Wire matter was the head of litigation for the Recording Industry Association of America ("RIAA").

[5] My client in Chambers was formally the Warner Music Group.  For efficiency reasons, the record companies requested--and I agreed--to argue the appeal on all of the record companies' behalf.

construed as a motion for disqualification (the "November 16 Order").

DISCUSSION

The standard for granting reconsideration is strict. Generally, motions for reconsideration are not granted "unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see also Rule 6.3, Local Civil Rules, S.D.N.Y. "Controlling authority means decisions of the Second Circuit Court of Appeals or the U.S. Supreme Court." Ivan Visin Shipping, Ltd. v. Onego Shipping & Chartering B.V., 543 F. Supp. 2d 338, 339 (S.D.N.Y. 2008) (citation omitted). Accordingly, a motion for reconsideration should not be used as a vehicle simply to voice disagreement with the Court's decision. See R.F.M.A.S., Inc. v. Mimi So, 640 F. Supp. 2d 506, 512-13 (S.D.N.Y. 2009). The decision to grant or deny the motion for reconsideration is within "the sound discretion of the district court." Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

Here, the parties do not cite to controlling authority warranting reconsideration of my November 16 Order. Regardless, I address each of Plaintiffs' arguments seriatim. When faced

7

with a recusal motion, the Second Circuit has made clear that

"[t]he judge presiding over the case is in the best position to

appreciate the implications of those matters alleged in a

recusal motion." In re Drexel Burnham Lambert, Inc., 861 F.2d

at 1312.

Plaintiffs rely on certain factors set forth in a 1996

paper published by the American Judicature Society.  They

believe that

> (1) the length of time since the earlier representation
> ended; (2) the nature of the prior and present cases;
> (3) the nature, frequency, intensity and duration of the
> representation; and (4) whether the former client will be
> defending practices the judge helped to formulate or defend

warrant recusal here.  Mot. for Reconsid. at 4 (citing Ethical

Issues for New Judges, Am. Judicature Society (1996)).

Application of those factors, which are not controlling, makes

it clear that recusal is unnecessary and inappropriate.


The Nature of the Prior and Present Cases

As an initial matter, I find Plaintiffs' comparison of the

legal issues in Lime Wire and those that remain in the present

action inaccurate.  Under Plaintiffs' theory, "there is a clear

relationship between the subject matter of the Lime Wire Action

and one of the central issues to this case," namely the proper

treatment of revenues under UMG's agreements with digital music

distributors.  Mot. for Reconsid. at 5-6.  That is not the case.

8

As set forth in the Joint Pretrial Order in this action, "Plaintiffs' remaining claims are state law claims for breach of contract and declaratory relief arising from UMG's failure to properly account for and pay royalties to Fifty-Six [Hope Road ("Fifty Six")] from the exploitation of Bob Marley's music." Jt. Pretrial Order (Dkt. No. 121) at 3. The claim for royalties "arise primarily out of the modified royalty provisions contained" in an agreement effective as of July 1, 1992 between "Fifty-Six's predecessor, Stichting Bob Marley, and UMG's predecessors, Island Records, Ltd. and Island Records, Inc." (the "1992 Agreement") "which modified the various prior recording agreements in several material respects, including the manner in which UMG would calculate record royalties." Id. at 3-4. According to the parties' own description of the remaining issues in this action, this matter (to be tried to a jury) relates to specific issues that I have never been retained by UMG to handle, regarding specific agreements I have never seen. Indeed, prior to the transfer of this action, I had no knowledge of the record company(ies) with which Bob Marley had worked.

The parties describe eight broad disputes over UMG's accounting for royalties in the Joint Pretrial Order, id. at 4-15, but Plaintiffs focus on one for purposes of this motion: how royalties and revenues are to be paid to Fifty-Six for music distributed digitally under paragraph 11 of the Royalty Schedule

attached to the 1992 Agreement.  See Mot. for Reconsid. at 6-7;
see also Jt. Pretrial Order at 4-6.  That issue is further
bifurcated into the questions of (a) whether UMG could properly
treat the digital sale of music the same as the sale of a
physical good (e.g., a CD) and account for royalties under
paragraph 2 of the 1992 Agreement (thus paying an 18 percent
royalty rather than a 60 percent royalty as required by
paragraph 11 of the 1992 Agreement), Jt. Pretrial Order at 5;
and (b) "the amount of revenues to be shared with Fifty-Six",
id. at 6.

     The Lime Wire case dealt with entirely different issues.
Lime Wire was a copyright infringement action by "thirteen major
record companies" against various entities and individuals "for
their role in the distribution of the Lime Wire software program
('LimeWire')" because it "permits users of the program to share
digital files over the Internet."  Arista Records LLC v. Lime
Group LLC, 784 F. Supp. 2d 398, 409 (S.D.N.Y. 2011) (Wood, J.).
Lime Wire primarily related to specific, highly technical peer-
to-peer software, and Lime Wire's executives' internal knowledge
regarding its use.  In Lime Wire, the record company plaintiffs
alleged that "LimeWire users employ LimeWire to obtain and share
unauthorized copies of [their] sound recordings, and that
Defendants facilitate this infringement by distributing and
maintaining LimeWire."  Id. (emphasis added).

From the above description, it is clear that Lime Wire and
the present action differ in significant ways:  licensed versus
unlicensed distribution; digital distribution agreements that
were negotiated when the digital recording industry was in its
nascent stage, see Jt. Pretrial Order at 4-5, versus unlicensed
digital distribution with developed internet technology; etc.
There are only two similarities:  (1) that in both actions there
were originally claims of copyright infringement (those claims
have now been disposed of on summary judgment in the present
action); and (2) that both actions involve the recording
industry.  I do not find such generalities to make recusal
necessary or appropriate.

Plaintiffs make two other (incorrect) arguments in support
of their "clear relationship theory."  First, they argue that
the relationship between the prior and present action can be
discerned from UMG's seeking actual damages in Lime Wire.  Mot.
for Reconsid. at 5.  According to Plaintiffs, calculating UMG's
"lost revenue[s]" "from authorized digital music outlets" would
require "counsel for the plaintiffs" (i.e., counsel for the
record companies in Lime Wire) "to be familiar with UMG's
arrangements with authorized digital music distributors . . . ."
Id. at 6.  My representation in the Lime Wire matter terminated
before the damages phase of the litigation, see Mem. & Order,
Nov. 16, 2011, at 2 (quoting November 14 minute order stating

11

that my "active participation" ended "when summary judgment

motions were fully submitted"), and thus, I did not gain the

alleged "familiar[ity]" with UMG's digital music licensing

agreements.  Indeed, a review of the Lime Wire docket reveals

that the record companies' licensing agreements were requested

and produced during the damages phase of discovery--i.e., well

after my representation ended.  See, e.g., Arista Records LLC v.

Lime Group LLC, 06 Civ. 5936, Order, Oct. 15, 2010 (Dkt. No.

329); see also Arista Records LLC v. Lime Group LLC, 06 Civ.

5936, Order, Nov. 2, 2010 (Dkt. No. 339).  Accordingly, "knowing

all the facts," see Lovaglia, 954 F.2d at 815, a reasonable

observer would not "likely conclude" that I "obtained

confidential information regarding UMG's internal analysis and

treatment of its distribution arrangements with digital music

providers[.]"  See Mot. for Reconsid. at 6.

Second, Plaintiffs divine a "clear relationship" from their

theory that I "was required to defend UMG's practices regarding

digital music licenses" against antitrust counterclaims brought

by the Lime Wire defendants.  Plaintiffs hypothesize that

"discovery conducted" over allegations regarding certain

licensing agreements "disclosed UMG's relationships with its

digital distributors," which has a "direct relationship to UMG's

treatment of digital music revenue generated under those same

agreements in connection with accounting to Fifty-Six Hope Road

Music Ltd. for royalties." Mot. for Reconsid. at 6-7. Again, that theory is not based in fact.

The counterclaims in Lime Wire were dismissed on Plaintiffs'/Counterclaim-Defendants' motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Arista Records LLC v. Lime Group LLC, 532 F. Supp. 2d 556 (S.D.N.Y. 2007) (Lynch, J.). Specifically, the antitrust counterclaims based upon the exclusive distribution agreements were dismissed on Twombly grounds because the defendants had "fail[ed] to allege any actual injury that it has suffered as a result of these restraints" and thus, did not allege antitrust injury sufficient to state a claim, id. at 571, and the counterclaims based upon mandatory licenses for hash-based filtering (which have no relevance to the issues here, but which I address for the sake of completeness) were dismissed on Twombly grounds for failure to plead a "plausible" conspiracy under the Sherman Act, id. at 578. The counterclaims did not make it past the pleading stage.

Accordingly, I find no merit to Plaintiffs' contention that there is proximity between the issues in Lime Wire and present actions.

The Length of Time Since the Earlier Representation

Plaintiffs state that recusal is necessary because my representation of UMG in Lime Wire ended "only eighteen months

13

ago." Mot. for Reconsid. at 5. As I stated in the November 14
minute order and in the November 16 Order, my representation of
UMG in Lime Wire ended when summary judgment briefing ended--
i.e., on January 8, 2010. See Arista Records LLC v. Lime Group
LLC, No. 06 Civ. 5936, Dkt. No. 201 (S.D.N.Y.). I did not
perform any legal work or have contact with anyone at UMG,
including counsel, from that date forward, including on or after
the day when a liability judgment was granted in favor of the
record company plaintiffs.

Plaintiffs further argue that the "general rule" is that
"two years must pass before a judge can hear a matter involving
a former client." Mot. for Reconsid. at 5. I am not persuaded
that the eight week difference between the date on which this
case was transferred (i.e., November 8, 2011) and the date on
which it would have been two years since the date I effectively
terminated my representation of UMG (i.e., January 8, 2012)
necessitates recusal. See, e.g., Sphere Drake Ins. Ltd. v. All
Am. Life Ins. Co., 307 F.3d 617, 621-22 (7th Cir. 2002) ("The
norm among new appointees to the bench is that once two years
pass, perhaps even earlier, a judge is free to sit in
controversies involving former clients" (emphasis added)) (cited
in Mot. for Reconsid. at 5). In addition, this case is set for
a jury trial on January 9, 2012--i.e., two years after my
representation of UMG ended. See Pretrial Scheduling Order,

14

Nov. 22, 2011 (Dkt. No. 165) at 1.

Close Alignment of Former Clients and UMG

Plaintiffs levy my prior representation of "other major record labels" (who are not parties to this)[6]--and the fact that counsel for UMG was listed on my Questionnaire for the United States Senate Committee on the Judiciary, see Cestero Decl., Ex. D, as "co-counsel" in three of those prior actions, all of which terminated over ten years ago--as a basis for reconsideration of my November 16 Order.  Mot. for Reconsid. at 7; see also id. at 3.[7]  That argument is overreaching.  UMG was simply a co-plaintiff in actions in which I represented labels owned by Warner Music Group.  The logical extension of that argument would have significant consequences for practicing attorneys who assume the bench, precluding them from hearing a vast number of cases for a certain number of years (by Plaintiffs' count, at least ten) for parties in which they had co-plaintiffs or co-defendants.  That cannot be the law--and Plaintiffs do not cite any in support of that argument.

In addition, I understand the "closely aligned" argument to

---

[6]  All such labels were owned by one company:  the Warner Music Group. The only other work I performed for other record labels was (a) the Second Circuit argument in Chambers where the other labels were not my clients, but where I argued on their behalf as a matter of efficiency, and (b) the Lime Wire case.

[7]  Mr. Bart, counsel for UMG in this matter, and I never shared a formal representation of the same client at the same time.

be an explication of the parties' "commonality of legal issues with respect to digital issues" argument from their November 14 letter. See Cestero Decl., Ex. A at 2. As I stated in the November 16 Order, expertise or familiarity with a particular aspect of the law is not grounds for recusal nor could it be if we want to have a well-informed and well-prepared bench. Mem. & Order, Nov. 16, 2011, at 4, 6.

Lastly, Plaintiffs argue that I should recuse myself because I disclosed on my Questionnaire for the United States Senate Committee on the Judiciary that "I would recuse myself from" "matters involving . . . Time Warner, Inc." and that because UMG was "co-plaintiff and/or co-defendant with Time Warner, Inc. in several matters" (without providing a time frame), "it seems that matters involving UMG" should be treated the same way. Mot. for Reconsid. at 9. I find no merit to that argument. Although my relationship with Time Warner, Inc. ("Time Warner") is not at issue here, that relationship is substantially different from my relationship with UMG.[8] I was lead counsel on numerous matters of significance for Time Warner over a substantial period of time; I have a current, personal friendship with Time Warner's General Counsel; and I have

---

[8] I note that Time Warner does not own a record company. Time Warner sold the Warner Music Group ("WMG") approximately eight years ago. I performed substantial work for WMG subsequent to that sale and would recuse myself from matters involving WMG pursuant to the ethical rules.

relationships--both personal and professional--with a number of individuals throughout Time Warner.  The same cannot be said of my relationship with UMG at any point in time.

Additional Considerations

In addition, the Ethical Issues for New Judges paper suggests other factors (not cited by Plaintiffs) that a court should consider in determining whether recusal is appropriate in a case involving a former client.  Although not controlling, those factors counsel against recusal--i.e., "the presence or absence of continuing personal relationships" (as I noted in the November 16 Order and above, I do not have nor have I ever had personal relationships with anyone, including counsel, at UMG); "whether the judge had discussed the suit with the former client" (I did and have not, nor was I even aware of the action prior to it being transferred to me); "whether the judge believes she has any bias for or against the former client" (I do not); "whether the case will be tried by the judge or a jury" (here, a jury); and "whether the former client will be calling witnesses the judge previously worked with, prepared, or called to testify" (as I stated in the November 16 Order, I did not work with or prepare any UMG personnel for deposition or otherwise during Lime Wire).  See Ethical Issues for New Judges at 15.

CONCLUSION

"Litigants are entitled to an unbiased judge; not to a judge of their choosing." In re Drexel Burnham Lambert, Inc., 861 F.2d at 1312.  I can confidently state that the litigants in this matter will be before an unbiased judge, albeit a judge with expertise in copyright law, which expertise derived, in part, from my prior representations of various companies in connection with a variety of copyright claims.

Accordingly, I do not find that Plaintiffs have presented authority--controlling or otherwise--that requires reconsideration of the November 16 Order.  I find the motion for reconsideration to be without merit.

For the aforementioned reasons, the motion for reconsideration is DENIED.

The Clerk of the Court is directed to terminate the motion (Dkt. No. 168).

SO ORDERED:

Dated:     New York, New York
           December 7, 2011

                                 K. B. Forrest
                                 _____
                                 KATHERINE B. FORREST
                                 United States District Judge